# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
|  | ) Civ. No. 8:07-cv-1279-T-30TGW |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| FTN PROMOTIONS, INC., a Florida | ) |
| corporation, dba Suntasia Inc., Suntasia | ) |
| Marketing, Inc., and Capital Vacations, *et al.*, | ) |
|  | ) |
| Defendants. | ) |

## PRELIMINARY INJUNCTION ORDER

In furtherance of this Court's Order (Dkt. #178) entered on January 15, 2008, the Court hereby enters this Preliminary Injunction Order.

The Court, having granted Plaintiff Federal Trade Commission's *Ex Parte* Motion for a Temporary Restraining Order with Asset Freeze and the Appointment of a Receiver; having entered an Order to Show Cause Why a Preliminary Injunction Should Not Issue; and having considered the submissions of the parties, and now being otherwise advised fully of the premises, hereby finds that:

1.   This Court has jurisdiction over the subject matter of this case and there is good cause to believe it will have jurisdiction over the parties;

2.   There is good cause to believe that FTN Promotions, Inc., dba Suntasia Inc., Suntasia Marketing, Inc., and Capital Vacations; Guardian Marketing Services, Corp., dba

Guardian Escrow Service; Strategia Marketing, LLC; Co-Compliance, LLC; JPW Consultants, Inc., dba Freedom Gold, Variety!, Credit Life, and Freedom Ring ULD; Travel Agents Direct, LLC, dba Travel Agents Go Direct, Floridaway, Travel Life Go Direct, Florida Direct, and Lucid Long Distance; Agent's Travel Network Inc., dba Florida Passport; Bay Pines Travel, Inc.; Suntasia Properties, Inc.; Bryon W. Wolf; Roy A. Eliasson; and John Louis Smith II (herein collectively referred to as "Defendants") have engaged in, and are likely to engage in the future in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as well as various provisions of the Telemarketing Sales Rule, 16 C.F.R. Part 310, and that the Commission is therefore likely to prevail on the merits of this action;

3.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for Consumers in the form of monetary restitution will occur from the sale, transfer, or other disposition or concealment by Defendants of their Assets or corporate records unless Defendants are immediately restrained and enjoined by Order of this Court;

4.      Weighing the equities and considering Plaintiff's likelihood of ultimate success, a preliminary injunction order with asset freeze and other equitable relief is in the public interest; and

5.      No security is required of any agency of the United States for issuance of a restraining order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this Preliminary Injunction ("Order"), the following definitions shall apply:

1.    **"Asset" or "Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of Consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.    **"Assisting others"** means providing any of the following goods or services to any person or entity engaged in telemarketing, including, but not limited to: (a) providing for or arranging for the provision of mail or telephone lists that contain, incorporate, or utilize consumers' account numbers; (b) preparing or providing, or causing to be prepared or provided, telephone sales scripts or other materials for use in connection with the promotion of products or services to consumers; (c) providing, mailing or shipping, or arranging for the provision, mailing, or shipping, of fulfillment products or services; (d) providing or arranging for the provision of telemarketing services; (e) providing or facilitating the means of obtaining payment from consumers, by providing or facilitating access to the credit card or bank account payment and collection system; (f) performing or providing marketing services of any kind; (g) developing, providing, or arranging for the provision of names of potential customers; (h) providing or arranging for the provision of post office boxes or the

3

services of commercial receiving agencies; (I) preparing, printing, or transmitting invoices; (j) recording or verifying sales solicitations; and (k) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints, obtaining or receiving identifying and financial information from consumers, and communicating with consumers on behalf of the seller or telemarketer.

3.      **"Consumer"** means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

4.      **"Defendant" or "Defendants"** means FTN Promotions, Inc., dba Suntasia Inc., Suntasia Marketing, Inc., and Capital Vacations; Guardian Marketing Services, Corp., dba Guardian Escrow Service; Strategia Marketing, LLC; Co-Compliance, LLC; JPW Consultants, Inc., dba Freedom Gold, Variety!, Credit Life, and Freedom Ring ULD; Travel Agents Direct, LLC, dba Travel Agents Go Direct, Floridaway, Travel Life Go Direct, Florida Direct, and Lucid Long Distance; Agent's Travel Network Inc., dba Florida Passport; Bay Pines Travel, Inc.; Suntasia Properties, Inc.; Bryon W. Wolf; Roy A. Eliasson; and John Louis Smith II, and by whatever other names each may be known, and any subsidiaries, affiliates, and any fictitious business entities or business names created or used by these entities, or any of them.

5.      **"Document" or "Documents"** means any materials listed in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection

4

devices.  A draft or nonidentical copy is a separate Document within the meaning of the term.

6.       **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

7.       **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

8.       **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

9.       **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

10.       **"Receivership Defendants"** means FTN Promotions, Inc., dba Suntasia Inc., Suntasia Marketing, Inc., and Capital Vacations; Guardian Marketing Services, Corp., dba Guardian Escrow Service; Strategia Marketing, LLC; Co-Compliance, LLC; JPW Consultants, Inc., dba Freedom Gold, Variety!, Credit Life, and Freedom Ring ULD; Travel Agents Direct, LLC, dba Travel Agents Go Direct, Floridaway, Travel Life Go Direct, Florida Direct, and Lucid Long Distance; Agent's Travel Network Inc., dba Florida Passport; Bay Pines Travel, Inc.; and Suntasia Properties, Inc.

# I.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that in connection with the advertising, promoting, offering for sale, or sale of any product or service, Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from:

A.      Misrepresenting, either orally or in writing, expressly or by implication, that:

1.      Defendants are calling from, on behalf of, or are otherwise affiliated with the Consumer's bank or other third party with whom the Consumer has conducted business;

2.      Defendants already have the Consumer's bank routing and account numbers;

3.      Consumers will have a designated period of time in which to review Defendants' program before incurring any charges;

4.      Defendants' free trial period will not begin to run until Consumers have received Defendants' informational material in the mail;

5.      Defendants will honor Consumers' requests to cancel their

6

participation in Defendants' programs;

6.      Consumers will be able to easily cancel their participation in Defendants' programs; and

7.      Consumers are entitled to keep and to use the gas coupons, airline savings vouchers, or "two free nights of hotel accommodations" even if they cancel Defendants' program.

B.      Failing to disclose, or disclose adequately, Material terms and conditions of any offer of any good or service, including, but not limited to:

1.      The fact that the Consumer's account will be charged unless the Consumer takes affirmative action to avoid the charge;

2.      That Consumers' checking account information will be used to debit their bank accounts to pay for Defendants' programs;

3.      The cost of Defendants' programs;

4.      The dates the charges to Consumers' checking accounts will be submitted for payment;

5.      The dates that a free trial period begins and ends;

6.      the specific steps Consumers must take in order to cancel Defendants' programs, including that Consumers must cancel each of Defendants' programs by calling a separate telephone number; and

7.      Any limitations and restrictions on the use of free gifts that Defendants offer to Consumers as an inducement to convince them to agree to

7

review one of Defendants' programs.

C.      Debiting a Consumer's bank account, or otherwise assessing charges to a Consumer, without first obtaining express informed consent from the Consumer for the charges;

D.      Assisting others who violate any provision of Paragraphs A, B or C of this Section.

E.      Violating, or assisting others in violating, any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, including, but not limited to:

1.      Section 310.3(a)(2)(vii) of the TSR, 16 C.F.R. § 310.3(a)(2)(vii), by misrepresenting, expressly or by implication, that Defendants are calling from, on behalf of, or are otherwise affiliated with the Consumer's bank or some other third party with whom the Consumer has conducted business;

2.      Section 310.3(a)(1)(vii) of the TSR, 16 C.F.R. § 310.3(a)(1)(vii), by failing to disclose truthfully, in a clear and conspicuous manner, before a Consumer pays for the goods or services offered, all Material terms and conditions of the negative option feature, including, but not limited to, the following: (1) the fact that the Consumer's account will be charged unless the Consumer takes affirmative action to avoid the charge; (2) the date(s) the charge(s) will be submitted for payment; and (3) the specific steps the Consumer must take to avoid the

8

charge(s);

3.     Section 310.3(a)(2)(iv) of the TSR, 16 C.F.R. § 310.3(a)(2)(iv), by misrepresenting, directly or by implication, a Material aspect of the nature or terms of Defendants' cancellation policy, including that:

     a.     Consumers will have a designated period of time in which to review and to cancel Defendants' programs before incurring any charges;

     b.     The free trial period will not begin until Consumers have received Defendants' informational material in the mail;

     c.     Defendants will honor Consumers' requests to cancel their participation in Defendants' programs;

     d.     Consumers will be able to easily cancel their participation in Defendants' programs; and

     e.     Consumers are entitled to keep and to use the gas coupons, airline savings vouchers, or "two free nights of hotel accommodations" even if they cancel Defendants' program;

4.     Section 310.4(d)(2) and (3) of the TSR, 16 C.F.R. § 310.4(d)(2) and (3), by failing to disclose promptly, and in a clear and conspicuous manner, that the purpose of Defendants' call is to sell goods or

services and the nature of the goods or services;

5.         Section 310.3(a)(3) of the TSR, 16 C.F.R. § 310.3(a)(3), by causing a Consumer's billing information to be submitted for payment without the Consumer's express verifiable authorization;

6.         Section 310.4(a)(6) of the TSR, 16 C.F.R. § 310.4(a)(6), by causing a Consumer's billing information to be submitted for payment without the Consumer's express informed consent; and

7.         Section 310.4(a)(5) of the TSR, 16 C.F.R. § 310.4(a)(5), by receiving, for consideration, unencrypted Consumer account numbers for use in telemarketing.

## II.

## MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from:

A.         Failing to create and maintain books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursements ledgers and source Documents, Documents indicating title to real or personal

property, and any other data which, in reasonable detail, accurately, fairly, and completely reflect the incomes, disbursements, transactions, dispositions, and uses of the Defendants' Assets;

B.      Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, including electronically-stored materials, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## III.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active

concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined until further order of this Court, from:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, or other Assets, or any interest therein, wherever located, including any Assets outside the territorial United States, that are: (1) owned, controlled, or held by, or for the benefit of, in whole or in part, any Defendant; or (2) in the actual or constructive possession of any Defendant, including, but not limited to, any Assets held for or by any Defendant in any account at any bank or savings and loan institution, or any credit card processing agent or agent providing electronic funds transfer services or automated clearing house processing, bank debit processing agent, network transaction processor, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other Financial Institution or depository of any kind, either within or outside the United States;

B.      Opening, or causing to be opened, any safe deposit boxes, commercial mail

12

boxes, or storage facilities titled in the name of, or for the use or benefit of, any Defendant, or subject to access by any Defendant, or under the control of any Defendant, without providing Plaintiff prior notice and an opportunity to inspect the contents in order to determine that they contain no Assets covered by this Section;

C.      Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant; and

D.      Incurring liens or other encumbrances on real property, personal property or other Assets titled in the name, singly or jointly, of any Defendant.

Notwithstanding the Asset freeze provisions of Sections III.A-D above, and subject to prior written agreement with the Commission, Defendants Bryon W. Wolf, Roy A. Eliasson, and John Louis Smith II may, upon compliance with Section VI (Financial Statements and Accounting), *infra*, pay from their individual personal funds reasonable, usual, ordinary, and necessary living expenses.

The Assets affected by this Section shall include both existing Assets and Assets acquired after the effective date of this Order.

## IV.

## PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, their agents, servants, and employees, and those Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate, or other device, are hereby restrained and

13

enjoined from:

A.      Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, email address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any Person from whom or about whom any Defendant obtained such information in connection with activities alleged in the FTC's Complaint;

B.      Benefitting from or using the name, address, birth date, telephone number, email address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any Person from whom or about whom any Defendant obtained such information in connection with activities alleged in the FTC's Complaint.

*Provided, however*, that Defendants may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

## V.

## DUTIES OF THIRD PARTIES

**IT IS FURTHER ORDERED** that each Person, Financial Institution, or other entity maintaining or having custody or control of any Asset of any Defendant, or that at any time since January 1, 2003, has maintained or had custody of any such Asset, and which is provided with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

14

A.      Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation or other disposal of any of the Assets or other property held by, under its control, or on behalf of any Defendant in any account maintained in the name of, or for the benefit or use of, any Defendant, in whole or in part, except as directed by further order of this Court, or by written agreement of Plaintiff and the parties claiming an interest in such account or Asset;

B.      Deny Defendants access to any safe deposit boxes, commercial mail boxes or storage facilities that are titled in the name, individually or jointly, of any Defendant, or otherwise subject to access by any Defendant;

C.      Within five (5) business days of the date of notice of this Order, provide to counsel for Plaintiff a certified statement setting forth:

> 1.      The identification of each account or Asset titled in the name, individually or jointly, of any Defendant, or to which any Defendant is a signatory, or which is held on behalf of, or for the benefit or use of, any Defendant or subject to any Defendant's control, including all trust accounts on behalf of any Defendant or subject to any Defendant's control;
>
> 2.      The balance of each such account, or a description and appraisal of the value of such Asset, as of the close of business on the day on which notice of this Order is received, and, if the account or other Asset has

been closed or removed, or more than $1,000 withdrawn or transferred from it within the last ninety (90) days, the date of the closure or removal of funds, the total funds removed or transferred, and the name and account number of the Person or entity to whom such account, funds, or other Asset was remitted; and

3.    The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant.

D.    Allow representatives of Plaintiff immediate access to inspect and copy, or upon Plaintiff's request, within five (5) days of said request, provide Plaintiff's representatives with copies of, any records or other Documents pertaining to any such account or Asset, including, but not limited to, originals or copies of account applications, corporate resolutions, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

The Assets affected by this Section shall include both existing Assets and Assets acquired after the effective date of this Order.

# VI.

## FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that, if they have not done so already in compliance with the temporary restraining order previously issued in this matter, each Defendant shall serve upon counsel for the Commission, no later than three (3) business days after service of this Order, a completed financial statement accurate as of the date of entry of this Order, in the form provided by Attachments A (for individuals) and B (for businesses) to the *Ex Parte* Temporary Restraining Order With Asset Freeze and the Appointment of Temporary Receiver ("TRO"), signed under penalty of perjury.

The financial statements shall include Assets held outside the territory of the United States, shall be accurate as of the date of the entry of this Order, and shall be verified under oath. Defendants shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements.

# VII.

## PERMANENT RECEIVER

### A.     APPOINTMENT OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is appointed Permanent Equity Receiver ("Receiver") for **FTN Promotions, Inc., dba Suntasia Inc., Suntasia Marketing, Inc., and Capital Vacations; Guardian Marketing Services, Corp., dba Guardian Escrow Service; Strategia Marketing, LLC; Co-Compliance, LLC; JPW**

**Consultants, Inc., dba Freedom Gold, Variety!, Credit Life, and Freedom Ring ULD; Travel Agents Direct, LLC, dba Travel Agents Go Direct, Floridaway, Travel Life Go Direct, Florida Direct, and Lucid Long Distance; Agent's Travel Network Inc., dba Florida Passport; Bay Pines Travel, Inc.; Suntasia Properties, Inc.**, and any of their affiliates, subsidiaries, divisions, or telephone sales operations, wherever located, with the full power of an equity receiver. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all Local Rules of this Court governing receivers.

**B.    RECEIVERSHIP DUTIES**

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

1.    Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, employee, independent contractor, or agent of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

2.    Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all Assets and Documents of the Receivership Defendants and other Persons or entities whose interests are now held by or under the

18

direction, possession, custody, or control of the Receivership Defendants. Provided, however, that the Receiver shall not attempt to collect any amount from a Consumer or to allow any Receivership Defendant to continue to debit monthly charges from a Consumer's account, if the Receiver believes the Consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

3.      Use any means necessary to take possession of and to secure all areas of the business premises of the Receivership Defendants. Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) videotaping all portions of the locations; (5) securing the locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations; (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Defendants; and/or (7) employ the assistance of law enforcement officers as the Receiver deems necessary to implement the provisions of this Order;

4.      Conserve, hold, and manage all receivership Assets, and perform all acts

necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to Consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of Assets, and including the authority to liquidate or close out any open securities or commodity futures positions of the Receivership Defendants;

5.      Enter into contracts and purchase insurance as advisable or necessary;

6.      Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of Consumers and creditors who have transacted business with the Receivership Defendants;

7.      Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

8.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

9.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of

any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

10.     Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws;

11.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

12.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

13.     Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the Assets of the receivership estate;

21

14.     Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

15.     Open one or more bank accounts in the Middle District of Florida as designated depositories for funds of the Receivership Defendants.  The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

16.     Maintain accurate records of all receipts and expenditures that he or she makes as Receiver;

17.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

18.     File reports with the Court on a timely and reasonable basis.

C.      **COOPERATION WITH THE RECEIVER**

        **IT IS FURTHER ORDERED** that:

1.      Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but not be limited to:

        a.      Providing any information to the Receiver that the Receiver deems

necessary to exercising the authority and discharging the

responsibilities of the Receiver under this Order;

b.  Providing any password required to access any computer,

electronic file, or telephonic data in any medium; or

c.  Advising all Persons who owe money to the Receivership

Defendants that all debts should be paid directly to the Receiver.

2.  Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from directly or indirectly:

a.  Transacting any of the business of the Receivership Defendants;

b.  Destroying, secreting, defacing, transferring, or otherwise altering

or disposing of any Documents of the Receivership Defendants,

including, but not limited to, books, records, accounts, writings,

drawings, graphs, charts, photographs, audio and video recordings,

computer records, and other data compilations, electronically-

stored records, or any other records of any kind or nature;

c.  Transferring, receiving, altering, selling, encumbering, pledging,

assigning, liquidating, or otherwise disposing of any Assets owned,

23

controlled, or in the possession or custody of, or in which an

interest is held or claimed by, the Receivership Defendants, or the

Receiver;

d.      Excusing debts owed to the Receivership Defendants;

e.      Failing to notify the Receiver of any Asset, including accounts, of

the Receivership Defendants held in any name other than the name

of the Receivership Defendants, or by any Person or entity other

than the Receivership Defendants, or failing to provide any

assistance or information requested by the Receiver in connection

with obtaining possession, custody, or control of such Assets;

f.      Doing any act or refraining from any act whatsoever to interfere

with the Receiver's taking custody, control, possession, or

managing of the Assets or Documents subject to this receivership;

or to harass or interfere with the Receiver in any way; or to

interfere in any manner with the exclusive jurisdiction of this Court

over the Assets or Documents of the Receivership Defendants; or

to refuse to cooperate with the Receiver or the Receiver's duly

authorized agents in the exercise of their duties or authority under

any Order of this Court; or

g.      Filing, or causing to be filed, any petition on behalf of any of the

Receivership Defendants for relief under the United States Bankruptcy

Code, 11 U.S.C. § 101 *et seq*., without prior permission from this

Court.

**D.      DELIVERY OF RECEIVERSHIP PROPERTY**

**IT IS FURTHER ORDERED** that:

1.      Immediately upon service of this Order upon them, or within such period as may be permitted by the Receiver, Defendants or any other Person or entity shall transfer or deliver possession, custody, and control of the following to the Receiver:

    a.      All Assets of the Receivership Defendants, including Assets subject to repatriation pursuant to Section VIII, *infra*;

    b.      All Documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

    c.      All Assets belonging to members of the public now held by the Receivership Defendants; and

    d.      All keys, codes, and passwords necessary to gain or to secure access to any Assets or Documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, mail boxes, or other property.  This includes providing the necessary means to gain access

to at least the following commercial mail boxes:

1.     10500 Ulmerton Road, Suite 726-302
Largo, FL 33771;

2.     13785 Walsingham Road, Suite 113
Largo, FL 33774;

3.     10460 Roosevelt Boulevard North, Suite 312
St. Petersburg, FL 33716;

4.     13799 Park Boulevard, Suite 312
Seminole, FL 33776;

5.     6822 22nd Avenue North, Suites 432, and PMB 303
St. Petersburg, FL 33710;

6.     3993 Tyrone Boulevard, Suite 608-182
St. Petersburg, FL 33709;

7.     11125 Park Boulevard, Suites 104-364, and 331
Seminole, FL 33772;

8.     2655 Ulmerton Road, Suite 407
Clearwater, FL 33762;

9.     10500 Ulmerton Road, Suite 726-305
Largo, FL 33771;

10.     3993 Tyrone Boulevard, Suite 608-149
St. Petersburg, FL 33709;

11.     200 2nd Avenue South, Suite 413
St. Petersburg, FL 33701;

12.     6860 Gulfport Boulevard, Suite 148
South Pasadena, FL 33707; and

13.     4604 49th Street, Suite 64
St. Petersburg, FL 33709.

2.     In the event any Person or entity fails to deliver or transfer any Asset or

otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other thing and to deliver it to the Receiver.

## E.     TRANSFER OF FUNDS TO THE RECEIVER

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all banks, savings and loan associations, credit unions, depository institutions, finance companies, commercial lending companies, credit card processing agents or agents providing electronic funds transfer services or automated clearing house processing, brokerage houses, escrow agents, money market or mutual funds, title companies, commodity futures merchants, commodity trading companies, precious metal dealers, trustees, or other Financial Institutions or depositories of any kind, shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his or her direction and producing records related to the Assets of the Receivership Defendants.

## F.     STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

1.      Except by leave of this Court, during pendency of the receivership ordered herein, Defendants and all other Persons and entities be and hereby are stayed from taking

any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

a.   Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

b.   Accelerating the due date of any obligation or claimed obligation; filing, perfecting or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to the Receivership Defendants that arose before the date of this Order against any claim against the Receivership Defendants;

c.   Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

d.   Doing any act or thing whatsoever to interfere with the Receiver

28

taking custody, control, possession, or management of the Assets or Documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants.

2.    This Order does not stay:

    a.    The commencement or continuation of a criminal action or proceeding;

    b.    The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

    c.    The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

3.    Except as otherwise provided in this Order, all Persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such Person or entity may thereafter seek an Order of this Court with regard to the relief requested.

G.      **COMPENSATION OF RECEIVER**

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of or which may be received by the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

H.      **RECEIVER'S BOND**

**IT IS FURTHER ORDERED** that the Receiver, if it has not already done so, shall file with the Clerk of this Court a bond in the sum of $50,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

I.      **ACCESS TO DEFENDANTS' BUSINESS PREMISES**

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary,

30

division, or other device, or any of them, and the Receiver, shall allow the Commission's representatives, agents, and assistants, as well as Defendants' representatives, and Defendants themselves, reasonable access to the premises of the Receivership Defendants, or any other premises where the Receivership Defendants conduct business or telephone sales operations.  The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by or in the possession of the Receivership Defendants or their agents.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.  The Commission may remove materials from the Defendants' business premises to inspect, inventory, and copy such materials.  The Commission shall return materials so removed within five (5) business days of completing said inventory and copying.

## VIII.

### REPATRIATION OF ASSETS AND DOCUMENTS LOCATED IN FOREIGN COUNTRIES

**IT IS FURTHER ORDERED** that Defendants shall:

A.      Within three (3) business days following service of this Order, take such steps as are necessary to repatriate to the territory of the United States of America all Documents and Assets that are located outside such territory and are held by or for Defendants or are under Defendants' direct or indirect control, jointly, severally, or individually;

B.      Within three (3) business days following service of this Order, provide Plaintiff with a full accounting of all Documents and Assets that are located outside of the territory of the United States of America or that have been transferred to the territory of the

31

United States pursuant to Subsection A above and are held by or for any Defendant or are under any Defendant's direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic Financial Institution or other entity holding the Documents and Assets, along with the account numbers and balances;

C.      Hold and retain all such Documents and Assets and prevent any transfer, disposition, or dissipation whatsoever of any such Documents or Assets; and

D.      Within three (3) business days following service of this Order, provide Plaintiff access to Defendants' records and Documents held by Financial Institutions or other entities outside the territorial United States, by signing and delivering to Plaintiff's counsel the Consent to Release of Financial Records attached to the TRO as Attachment C.

## IX.

## EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A)-(C), and 31(a)(2)(A)-(C), Plaintiff is granted leave, at any time after service of this Order to:

A.      Take the deposition of any Person or entity, whether or not a party, for the purpose of discovering the nature, location, status, and extent of the Assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of Documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct

business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action; and

B.      Demand the production of Documents from any Person or entity, whether or not a party, relating to the nature, status, and extent of the Assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of Documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action.

Three (3) days notice shall be deemed sufficient for any such deposition, five (5) days notice shall be deemed sufficient for the production of any such Documents, and twenty-four (24) hours notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only as electronic data.  The provisions of this Section shall apply both to parties to this case and to non-parties.  The limitations and conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such depositions taken pursuant to this Section shall not be counted toward any limit on the number of depositions under the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure for the United States District Court for the Middle District of Florida, including those set forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made

through the means described in Section XI of this Order.

## X.

### DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each of their corporations, subsidiaries, affiliates, divisions, directors, officers, agents, partners, successors, assigns, employees, attorneys, agents, representatives, sales entities, sales persons, telemarketers, independent contractors, and any other Persons in active concert of participation with them. Within five (5) calendar days following service of this Order by Plaintiff, each Defendant shall file with this Court and serve on Plaintiff, an affidavit identifying the names, titles, addresses, and telephone numbers of the Persons and entities Defendants have served with a copy of this Order in compliance with this provision.

## XI.

### SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be distributed by U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally, by agents or employees of Plaintiff, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any Person, Financial Institution, or other entity that may have possession or control of any property, property right, Document, or Asset of any Defendant, or that may be subject to any provision of this Order. Service upon any branch or office of any Financial Institution or entity shall effect service upon the entire Financial Institution or entity.

34

## XII.

## CONSUMER REPORTING AGENCIES

**IT IS FURTHER ORDERED** that, pursuant to Section 604 of the Fair Credit

Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency may furnish a consumer

or credit report concerning any Defendant to Plaintiff.

## XIII.

## JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter

for all purposes.

**DONE** and **ORDERED** in Tampa, Florida on February 11, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2007\07-cv-1279.prelim inj order.wpd

35